JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 14-07836-AB (ASx) | Date: | December 19, 2014 |

Title: *Michael Smith v. Staples Contract & Commercial, Inc.*

Present: The Honorable  ANDRÉ BIROTTE JR.

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] Order GRANTING Plaintiff's Motion to Remand (Dkt. No. 12)

On June 24, 2014, Plaintiff Michael Smith commenced an action in the Superior Court of California, County of Los Angeles (case no. BC549711) against corporate defendants Staples Contract & Commercial, Inc. and Staples, Inc. (collectively, "Staples" or the "Staples Defendants"), and individual defendants Dwayne Morrison, Diana Mondragon, and Victor Esposo (collectively, the "Individual Defendants") (Dkt. No. 1-1.) On October 8, 2014, Defendants filed a Notice of Removal to this Court under 28 U.S.C. § 1332 on the ground that the district court has diversity jurisdiction over the action. (Dkt. No. 1.)

Before this Court is Plaintiff's Motion to Remand on the grounds that this Court lacks subject matter jurisdiction because Defendants have failed to establish complete diversity among the parties. (Dkt. No. 12.) Having considered the materials submitted by the parties, and for the reasons indicated below, the Court **GRANTS** Plaintiff's Motion to Remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Complaint

Plaintiff in this workplace discrimination and wrongful termination action is a resident of Los Angeles County. As alleged in the operative complaint, Plaintiff worked as a loader for Staples from 2008 to October 18, 2013.[1] (Dkt. No. 1-1, ¶¶14, 28.) During that time, Individual Defendants Lionel Morerro and Dewayne Morrison were Plaintiffs direct supervisors. (*Id.*, at ¶14.) On June 29, 2012, Plaintiff alleges he filed for workers compensation due to stress, fatigue, headaches, anxiety, sleep disorders, high blood pressure, eating disorder, depression, and nervousness. (*Id.*, at ¶15.) However, a human resources manager advised Plaintiff not to tell his supervisors the reason for his leave because Plaintiff's supervisors would likely retaliate against Plaintiff. (*Id.*)

When Plaintiff returned from his stress leave in February 2013, Individual Defendants Victor Esposo and Dewayne Morrison began to cut Plaintiff's hours, requiring Plaintiff to complete the same amount of work in less time. (Dkt. No. 1-1, ¶16.) Unhappy with his new working situation, Plaintiff asked Esposo and Morrison to be transferred to a different department, where he could work a full eight-hour day. (*Id.*, at ¶17.) Plaintiff got his transfer to the replenishment department, but Plaintiff's supervisor in the new department quickly reprimanded Plaintiff for returning late from lunch despite the fact that many other employees returned at the same time. (*Id.*, at ¶18.) When Plaintiff asked his new supervisor why Plaintiff had been singled out for reprimand, Plaintiff's new supervisor stated "I was told to keep a close eye on you." (*Id.*, at ¶19.)

One month after returning to work, Plaintiff suffered a non-work related injury while playing basketball. (Dkt. No. 1-1, ¶19.) Plaintiff went on medical leave for ankle surgery in May 2013 and returned to work on June 15, 2013. (*Id.*, at ¶¶19, 20.) When Plaintiff returned in June 2013, however, he returned with medical restrictions stating he could not pull, push, or lift anything weighing more than 10 pounds. (*Id.*, at ¶20.) When Morrison assigned Plaintiff to a job that required Plaintiff to lift more than 10 pounds, Plaintiff stated that he had a medical restriction and could not perform that task. (*Id.*) Morrison responded by stating "if you can't work here full duty then go back on leave of absence." (*Id.*) Eager to work, Plaintiff returned to his doctor, who increased Plaintiff's weight restriction from 10 pounds to 60 pounds. (*Id.*)

Two months later, in August 2013, Morrison told Plaintiff that Morrison needed Plaintiff back on full duty. (*Id.*, at ¶21.) Plaintiff said he could not yet return to full duty and could not even drive his car yet due to his medical condition. (*Id.*) Morrison responded by stating, "well if you can't be here 100%, then we do not need you." (*Id.*) Plaintiff complained that Morrison was retaliating against him, and Defendant Mondragon

---

[1] Plaintiff alleges he worked as a loader for Corporate Express from 1993 to 2008. (Dkt. 1-1, ¶14.) Plaintiff alleges Staples purchased Corporate Express in 2008, and Plaintiff began working for Staples.

(another supervisor) approached Plaintiff and demanded to know when Plaintiff's next doctor's visit would be. (*Id*.) In September 2013, Plaintiff returned to his doctor, who maintained Plaintiff's 60-pound weight restriction. (*Id*., at ¶22.) After Plaintiff told Mondragon he would continue on the weight restriction, Defendants hired four younger, part-time workers to replace Plaintiff in the replenishment department and, and Mondragon told Plaintiff he would have to return to full duty in the more strenuous bulk department. (*Id*., at ¶22.) Plaintiff asked to stay in the replenishment department because it was a lighter duty job, but Defendant refused, stating they only wanted the younger, cheaper part time employees working in replenishment and there would never be a full-time position for Plaintiff in that department. (*Id*.) Ultimately, Plaintiff transferred back to the bulk department where his ankle worsened and he developed additional problems in his knee. (*Id*.) After being transferred to the bulk department, Plaintiff was written-up for being too slow at his more strenuous job. (*Id*., at ¶23.)

On October 8, 2013, Plaintiff went to the human resources department to complain that he was being mistreated. (Dkt. No. 1-1, ¶24.) Plaintiff complained that older employees had fewer hours to complete a full-day's work, while younger, part-time workers received 10-12 hour shifts to complete the same amount of work. (*Id*.) The next day, Morrison and Mondragon called Plaintiff in for a closed-door meeting to discuss the complaints Plaintiff had lodged with human resources. (*Id*.) In that meeting, Morrison and Mondragon reiterated that Plaintiff would never get the position he wanted back in the replenishment department because they only wanted younger, part-time employees in that department. (*Id*.) Morrison and Mondragon also asked Plaintiff if he had considered looking for another job. (*Id*.) Plaintiff complained that his body was "breaking down" and Mondragon suggested Plaintiff start looking for a new job because, if Plaintiff did not find a new job and leave, they would "have to let [Plaintiff] go." (*Id*.)

On October 9, 2013, Plaintiff attempted to clock in for work at 4:05 p.m., but his security badge did not work. (Dkt. No. 1-1, ¶26.) After about 10 attempts, Plaintiff was finally able to clock in. (*Id*.) Plaintiff told Victor Esposo about the incident and Esposo said he would get Plaintiff a new badge. (*Id*.) At the end of his shift, Plaintiff filled out a manual time card and reported his start time as 4:10 p.m. (*Id*.) On October 11, 2013, Defendants notified Plaintiff that they were investigating his tardiness. (*Id*., at ¶27.) On October 15, 2013, Mondragon informed Plaintiff that the investigation revealed his actual start time was 4:20 and she accused Plaintiff of "stealing company time" by falsely reporting his hours. (*Id*.) Mondragon then informed Plaintiff that he was suspended from duty. (*Id*.) Three days later, Mondragon called Plaintiff to tell him that he was being terminated. (*Id*., at ¶28.) In a follow-up termination email, Defendants told Plaintiff he was being terminated because of the time discrepancy between when he reported starting work and when he was seen entering the building. (*Id*.) Prior to his termination, Plaintiff performed his job duties in an exemplary manner at all times. (*Id*., at ¶14.)

In November and December 2013, Plaintiff heard that other, younger employees had experienced similar issues with their badges. (*Id.*, at ¶¶29, 30.) However, Mondragon advised those employees to write down their normal start time as opposed to the time they actually entered the building due to their badge malfunction. (*Id.*, at ¶29.) Defendants replaced Plaintiff with two younger, part-time employees. (*Id.*, at ¶33.) Since being terminated, Plaintiff has been unable to find a new job because he must report that he was terminated from his last job for stealing company time and misreporting his hours. (*Id.*, at ¶32.)

From those allegations, Plaintiff alleges numerous causes of action against Staples and the Individual Defendants for disability discrimination, harassment, retaliation, failure to accommodate, failure to engage in the interactive process, wrongful termination, intentional infliction of emotional distress, violation of California labor statutes, defamation, compelled self-defamation, breach of implied-in-fact contract not to terminate without good cause, and breach of express oral contract not terminate without good cause.

### B. Defendant's Notice of Removal and Plaintiff's Motion for Remand

On October 8, 2014, Defendants removed the action to this Court. In the notice of removal, Defendants allege the Staples Defendants are incorporated in Delaware with their principal places of business in Massachusetts. (Dkt. No. 1, ¶¶16-19.) Plaintiff and Defendants agree that Plaintiff and the Individual Defendants are California citizens. (Dkt. No. 1, ¶¶6-9; Dkt. No. 1-1, ¶¶4-7.) However, Defendants contend the individual defendants are "sham" defendants whose citizenship must be disregarded for the purposes of determining complete diversity. (Dkt. No. 1, ¶¶23-60.)

Plaintiff now moves to remand the action to the Los Angeles Superior Court. (Dkt. No. 12.) Plaintiff contends that the Court lacks diversity jurisdiction because there is not complete diversity among the parties and because Defendants have not shown that the amount in controversy exceeds $75,000. Defendants oppose.

## II. LEGAL STANDARD

### A. Removal

Under 28 U.S.C. § 1441(a), a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. Under 28 U.S.C. § 1332, a district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." Section 1332 requires complete diversity, *i.e.*, that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996). Section 1441 limits removal to cases where no defendant "properly joined and served . . . is a citizen of the

State in which such action is brought." 28 U.S.C. § 1441(a)(b)(2). Removal statutes are "strictly construe[d] against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Id.* Accordingly, the removing party bears a heavy burden of establishing original jurisdiction in the district court. *Id.*

### B. Fraudulent Joinder

A non-diverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The term "fraudulent joinder" is a term of art and does not connote any intent to deceive on the part of plaintiffs or their counsel. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd.*, 710 F.2d 549 (9th Cir. 1983). The relevant inquiry is whether plaintiff has failed to state a cause of action against the non-diverse defendant, and the failure is obvious under settled state law. *Morris*, 236 F.3d at 1067; *McCabe*, 811 F.2d at 1339.

The burden of proving fraudulent joinder is a heavy one. The removing party must prove that there is "no possibility that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of America*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). In this regard, "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009); *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand."). "Merely a 'glimmer of hope' that plaintiff can establish [a] claim is sufficient to preclude application of [the] fraudulent joinder doctrine." *Gonzalez v. J.S. Paluch Co.*, No. 12-08696-DDP (FMOx), 2013 WL 100210, at *4 (C.D.Cal. Jan.7, 2013) (internal quotations omitted); *accord Ballestros v. American Standard Ins. Co. of Wisconsin*, 436 F.Supp.2d 1070, 1072 (D. Ariz. 2006) (same) (citing *Mayes v. Rapoport*, 198 F.3d 457, 463-64 (4th Cir. 1999).

## III. DISCUSSION

Defendants removed this action to federal court on the grounds that this Court has subject-matter jurisdiction under the Court's diversity jurisdiction. In the instant Motion to Remand, Plaintiff argues that this Court lacks original jurisdiction because (among other things) there is not complete diversity as between Plaintiff (a citizen of California) and the Individual Defendants (all citizens of California), as required by 28 U.S.C. § 1332.[2]

---

[2] Plaintiff argues that Defendants cannot meet their burden to establish that Plaintiff is a citizen of California because the complaint only alleges Plaintiff's residence. (Dkt. No. 12, p. 9.) A natural person's citizenship is determined by state of

Defendants argue that complete diversity exists because the Individual Defendants are sham and fraudulently joined defendants.

### A. Plaintiff Has Adequately Alleged a Claim of Harassment Against Defendant Morrison

Plaintiff's complaint asserts three claims against Morrison: harassment based on disability in violation of California's Fair Employment and Housing Act ("FEHA," Cal. Gov. Code §§12940(j)(1), (k)), harassment based on medical condition in violation of the FEHA, intentional infliction of emotional distress, defamation, and compelled self-defamation. Turning to the harassment claims, FEHA makes it unlawful for, *inter alia*, for an "an employer . . . or any other person," to harass an employee because of age, disability, or medical condition. Cal. Gov. Code § 12940(j)(1). Harassment includes conduct "outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 63 (Cal. Ct. App. 1996). The conduct must be "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive work environment,'" and it excludes conduct that is "occasional, isolated, sporadic, or trivial." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 609 (Cal. Ct. App. 1989) (citations omitted). Nonetheless, California law recognizes that "harassment by a high-level manager of any organization may be more injurious to the victim because of the prestige and authority that the manager enjoys." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 709 (Cal. 2009).

#### 1. Managerial Acts

Generally, managers cannot be individually liable for harassment under the FEHA for pure personnel decisions. *Reno v. Baird*, 18 Cal. 4th 640, 646 (Cal. 1998) (distinguishing harassment from discrimination claims, the later which allows individual liability of managers for personnel decisions). Instead, a claim of harassment against an individual manager (as opposed to a claim for discrimination against the employer) must typically allege the manager acted "outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Jaken v. GM Hughes Electronics*, *supra*, 46 Cal.App.4th at 63. However, managers may also be individually liable for harassment where their personnel or management decisions "have a secondary effect of communicating a hostile message. This occurs when the actions establish a widespread pattern of bias." *Roby v.*

---

domicile, not residence. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff alleges that he resides, and has resided during all relevant times, in California. (Dkt. No. 1-1. ¶1.) That is, Plaintiff affirmatively alleges he has been a resident of California from at least 1993 (when alleges he began working for Corporate Express) through the present. Plaintiff's contention that more than 20 years of living and working exclusively in California is insufficient to establish California is Plaintiff's "permanent home" is unavailing.

*McKesson Corp.*, *supra*, 47 Cal. 4th at 709. Moreover, a fact finder may look to both categories of evidence – evidence of the manager's conduct falling outside his or her necessary job duties *and* evidence of the manager's official actions – to determine whether an individual manager engaged in harassment. In California, there is "no reason why an employee who is the victim of discrimination based on some official action of the employer cannot also be the victim of harassment by a supervisor for abusive messages that create a hostile working environment… ." *Id*. at 707. Although a manager's official personnel decisions are usually not, by themselves, sufficient to establish an individual claim of harassment against a manager, "discrimination and harassment claims can overlap as an evidentiary matter" because evidence that a manager took adverse official actions "can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." *Id*. at 709.

In this case, Plaintiff alleges that Morrison began to cut his hours immediately after Plaintiff returned from his first medical leave in February 2013. And when Plaintiff asked to be transferred to the lighter-duty replenishment department, Plaintiff Morrison told Plaintiff's new supervisor to "keep a close eye on" Plaintiff,[3] despite the fact that Plaintiff had an exemplary record of job performance. After Plaintiff's second medical leave, Plaintiff alleges in June 2013 Morrison assigned Plaintiff to a job that exceeded Plaintiff's doctor-imposed weight restrictions. When Plaintiff objected, Morrison told Plaintiff to "go back on a leave of absence" if he intended to follow his doctor's orders. In response to Morrison's conduct, Plaintiff alleges he specifically asked his doctor to increase his weight limit, which the doctor did. However, in August 2013 Morrison told Plaintiff "we don't need you" if Plaintiff continued to abide by his increased physician-imposed weight restrictions. Plaintiff alleges Morrison's conduct sufficiently affected his working conditions to warrant filing a formal complaint against Morrison. After Plaintiff complained, Morrison, as Plaintiff's supervisor, reassigned Plaintiff to the even more physically strenuous bulk department in September 2013,[4] where Plaintiff's medical condition worsened and he was written up for not working fast enough despite his work restrictions and reduced hours.

Defendants contend that every fact Plaintiffs allege as to Morrison constitutes an act necessary to Morrison's job performance, rather than one "engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." (Dkt. No.

---

[3] In the Complaint, Plaintiff generally alleges that "Defendants" told Plaintiff's new supervisor to "keep a close eye on" Plaintiff. To the extent that complaint is ambiguous as to which of the several defendants made that statement, the Court must resolve all doubts against removal. To the extent Defendants would assert that some other defendant made that statement to the exclusion of Morrison, it was Defendant's burden to so prove with clear and convincing evidence. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) ("Fraudulent joinder must be proven by clear and convincing evidence.")

[4] See footnote 3, above.

13, pp. 18-19.) It may be that a jury would so find, but that is not the inquiry before the court. In California, whether an act falls within the scope of employment is generally a question of fact reserved for the jury. *Myers v. Trendwest Resorts, Inc.*, 148 Cal.App.4th 1403, 1428. Of course, in exceptional circumstances the facts may be so clear that "no conflicting inferences are possible" and courts may determine whether the conduct fell within the delegated scope of a supervisor's authority as a matter of law. *Id*. But Defendants offer no argument to suggest that this is such a case. Rather, Defendants cite to three cases in which other district courts granted motions to dismiss harassment claims for failure to allege any conduct outside the scope of the individual supervisor's necessary job functions. Notably absent from Defendants' argument is any discussion of why *Morrison's* alleged conduct *in this case* was so obviously necessary to his job functions that the Court may so decide as a matter of law. (Dkt. No. 13, pp. 18-19.)[5] It is not the Court's role to resolve that factual question, which must be decided in state court. *Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (remanding to state court where material issue of fact going to district court's removal jurisdiction in dispute). And to the extent it is possible that California law would treat some or all of Morrison's alleged conduct as "necessary" to his job as a matter of law, it is "at best a doubtful question of state law which should be tried in the state court and not determined in removal proceedings." *Smith v. Southern Pacific Co.*, 187 F.2d 397, 402 (9th Cir. 1951).

Moreover, a supervisor may be individually liable under California law for purely managerial acts where those acts "have a secondary effect of communicating a hostile message. This occurs when the actions establish a widespread pattern of bias." *Roby v. McKesson Corp.*, *supra*, 47 Cal. 4th at 709. Defendants attempt to distinguish *Roby* by asserting that, in *Roby*, the issue was not whether purely managerial acts could be sufficient to state a claim of harassment, but whether, based on those allegations it was conceivable that the plaintiff could amend her pleadings to allege harassment. (Dkt. No. 13, p. 21.) That is, Defendants argue the thrust of *Roby* was not the managerial acts were themselves sufficient, but that they suggested the possibility that the defendant's conduct went beyond managerial decisions, which the plaintiff could allege on amendment. Even if correct, this distinction is of little use to Defendants. To avoid remand "the *defendant must establish* that plaintiff could not amend his complaint to add additional allegations correcting any deficiencies." *Ontiveros v. Michaels Stores, Inc.*, 2013 WL 815975, at *5 (C.D. Cal. Mar, 5, 2013) (emphasis added). Defendants have not met this high burden, and, if anything Defendants reading of *Roby* counsels the opposite conclusion. Defendants' attempt to

---

[5] In any event, the cases Defendants cite for this proposition are inapposite. In *Brooks v. City of Freemont*, No. C 07-06458 (JSW), 2008 WL 1994889, at *4-5 (N.D. Cal. May 5, 2008), the court dismissed harassment claims against individual defendants who did not personally engage in any of the allegedly discriminatory conduct, but only supervised others who did. In *Jacobson v. Schwarzenegger*, 357 F.Supp.2d 1198, 1220 (C.D. Cal. 2004), the court dismissed harassment claims against two members of California's Board of Prison Terms responsible for supervising the composition of the Board's attorney panel where the plaintiff alleged the first individual defendant threatened to remove the plaintiff from the panel and the second informed the plaintiff he had been removed from the panel. And in *Heath v. AT&T Corp.*, No. C-05-0719 (VRW), 2005 WL 2206498, at *10 (N.D. Cal. Sept. 12, 2005), the court dismissed a harassment claim where the plaintiff only alleged she was denied promotions and bonuses, which were indisputably personnel decisions.

shift their burden to Plaintiff is unavailing. *See Padilla v. AT&T Corp.*, *supra*, 697 F.Supp.2d at 1159-60 (remanding action where defendant failed to demonstrate that the plaintiff would not be given leave to amend to cure the pleading deficiency regarding the alleged sham defendant).

### 2. Pervasive Acts Altering the Conditions of Employment

Finally, Defendants contend Morrison is fraudulently joined because Plaintiff's allegations are "too isolated and trivial in nature to support a harassment claim." (Dkt. No. 13, p. 19.) Rather than arguing why the facts actually alleged against Morrison fall outside the ambit of harassment under the FEHA as a matter of law, however, Defendants note three cases where courts held there was no harassment despite the fact that those cases involved more allegedly harassing incidents. (*Id.*, pp. 19-20 (citing *Etter v. Veriflo Corp.*, 67 Cal.App.4th 457, 465 (Cal. Ct. App. 1998), *Haberman v. Cengage Learning, Inc.*, 180 Cal.App.4th 365, 383-84, and *Manatt v. Bank of America, N.A.*, 339 F.3d 792, 798 (9th Cir. 2003). The Court begins by observing that in none of those cases did the trial court dispose of the harassment claim at the pleading stage. Each examined the totality of the evidence developed through discovery to determine whether the facts supported a claim of harassment.[6] More importantly, however, "there is neither a threshold 'magic number' of harassing incidents that gives rise ... to liability ... nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Dee v. Vintage Petroleum, Inc.*, 106 Cal.App.4th 30, 36. It is the quality of harassing conduct, and not necessarily the quantity, that is key. As the Court already observed, California law recognizes that harassment by a supervisor like Morrison is more injurious than harassment by a co-worker. *Roby v. McKesson Corp.*, 47 Cal.4th at 709. In some instances, California law recognizes that even a single harassing act by a supervisor may be sufficient to support a claim of harassment if it helps to explain the supervisors other abusive managerial conduct.[7] *Dee v. Vintage Petroleum, Inc.*, 106 Cal.App.4th at 36 (reversing trial court's grant of summary judgment on harassment claim under the FEHA in favor of defendant where supervisor uttered a single racial slur).

Plaintiff alleges that, despite Plaintiff's exemplary work history, Morrison repeatedly chastised Plaintiff for Plaintiff's medical condition, spoke ill of Plaintiff to other supervisors, and proceeded to take a number of adverse employment actions against Plaintiff designed to either exacerbate Plaintiff's medical condition or cause him to underperform. Plaintiff alleges this pattern of conduct extended over the course of many months, and ultimately contributed to his allegedly wrongful termination after Plaintiff complained of Morrison's (and others') improper conduct. Given Morrison's supervisory

---

[6] Indeed, *Manatt v. Bank of America, N.A.*, did not involve harassment claims under the FEHA at all. The question in *Manat* was whether, at summary judgment, there was sufficient evidence to support the plaintiff's hostile work environment claim under 42 U.S.C. §1981. *Manatt v. Bank of American, N.A.*, 339 F.3d at 797.

[7] To this point, it is worth noting both *Etter* and *Manatt* involved claims of harassment by co-workers, not supervisors.

role, the lengthy period of time over which Morrison allegedly acted, and the nature of Morrison's allegedly vindictive conduct, the Court cannot say at this stage in the litigation that there is "no possibility" Plaintiff will be able to establish a harassment claim against Morrison in state court, especially if he is granted leave to amend. *See Good v. Prudential Ins. Co. of America*, 5 F.Supp.2d at 807   Defendants bear a "heavy burden" (*Gaus v. Miles, Inc.*, 980 F.2d at 566) to show Plaintiff cannot, under any circumstances, allege Morrison's conduct was "sufficiently severe or pervasive to 'alter the conditions of [Plaintiff's] employment and create an abusive work environment." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d at 609.   They have not done so.

### IV.   CONCLUSION

Defendants have not met their heavy burden to prove by clear and convincing evidence that there is no possibility Plaintiff could assert a harassment claim against Morrison.  While Defendants may ultimately prevail on the harassment claim, "such a consideration is of limited import for purposes of the instant motion, which requires Plaintiff to make even less of a showing than would be required on a motion to dismiss." *Chavez v. Amerigas Propane, Inc.*, 2013 WL 25882, at *8 (C.D. Cal. Jan. 2, 2013) (citation omitted).  As alleged, there is at least a "glimmer of hope" that Plaintiff will be able to proceed on his claim against Morrison in state court.   Because it is possible Plaintiff may state a claim against Morrison, there is not complete diversity of the parties, and the Court lacks subject matter jurisdiction over the action.   For that reason, it would be improper to consider the parties' remaining arguments regarding the validity of Plaintiff's claim against the other individual defendants. *See, e.g.*, *Okuda v. Kaiser Permanente*, No. 3:13-CV-872-PK, 2013 WL 3216115, at *1 (D. Or. June 21, 2013) ("this court lacks subject-matter jurisdiction over plaintiff's action… and therefore lacks authority to consider the merits of plaintiff's claims").  Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand.  (Dkt. No. 12.)  Plaintiff's request for attorneys' fees and costs is **DENIED**.

The Court **REMANDS** this case to the Superior Court of California for the County Los Angeles County, Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, California 90012, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c). The Court **ORDERS** the Clerk to send a certified copy of this Order to the state court.

Pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 7-15, the Court finds this matter appropriate for determination without oral argument, and the hearing previously scheduled for December 22, 2014 at 10:00 a.m. is hereby **VACATED**.  The Court additionally **VACATES** the February 2, 2015 hearing on Defendants' motion to dismiss and the scheduling conference set for that same date.  The court **DENIES** Defendants' motion to dismiss (Dkt. No. 11) for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**